Paul J. Hooten, Esquire
PAUL HOOTEN & ASSOCIATES
5505 Nesconset Highway, Suite 203
Mount Sinai, NY 11766

Tel: 631-331-0547
Fax: 631-331-9566
pjhooten@mindspring.com

Attorneys for Plaintiff
Garden City Boxing Club, Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN
DISTRICT OF NEW YORK
(FOLEY SQUARE)

| | |
|---|---|
| GARDEN CITY BOXING CLUB, INC.<br><br>Plaintiff,<br><br>vs.<br><br>ANGEL P. ALMANZAR, individually and NEW MILLENIUM SEAFOOD CORP., d/b/a NEW MILLENIUM SEAFOOD,<br><br>Defendants. | Case No. 1:07-CV-08077-RPP-DFE<br><br>PLAINTIFF'S AFFIDAVIT IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT |

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

STATE OF CALIFORNIA    )
                       ) ss:
COUNTY OF SANTA CLARA  )

I, JOSEPH M. GAGLIARDI, being duly sworn, deposes and states the following:

1. I am the President of Plaintiff, GARDEN CITY BOXING CLUB, INC., and as such I am fully familiar with the facts, circumstances, and proceedings heretofore had herein.

2. I make this affidavit in support of Plaintiff's request to recover statutory damages, including attorneys' fees, investigative costs, and interest in the within request for judgment by default.

3. Our company Garden City Boxing Club, Inc., is a closed-circuit distributor of sports and entertainment programming. Our company purchased and retains the commercial exhibition licensing rights to the *Oscar De La Hoya v. Bernard Hopkins World Middleweight Championship Fight Program* (hereinafter "Program") which was broadcast on September 18, 2004. Our company thereafter marketed the sub-licensing (commercial exhibition) rights in the Program to our company's commercial customers (i.e., casinos, racetracks, bars, restaurants, and nightclubs).

4. Simultaneously with the advent of pay-per-view programming, we began to experience a serious erosion in the sales of our own proprietary programming to our commercial customers throughout the United States of America. To protect ourselves, we endeavored to find out what was the basis for the erosion and determined from our customers that the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed establishments (signal pirates).

5. In response, we embarked upon a nationwide program to police our signals for the purpose of identifying and prosecuting commercial establishments which pirate our programming (including the *Oscar De La Hoya v. Bernard Hopkins World Middleweight Championship Fight Program*, the subject program involved in this lawsuit)

6. Specifically, Garden City Boxing Club, Inc., retained, at considerable

expense, auditors and law enforcement personnel to detect and identify signal pirates. To ensure that only illegal locations were visited by the auditors, our company compiled our confidential list of customers (authorized and legal locations) who paid the required license fee to broadcast the Program, and this list was distributed to participating auditing and law enforcement agencies in strict confidence.

7. The above referenced *Program* contained several televised under-card bouts, and color commentary, along with the main event prizefight between Oscar De La Hoya and Bernard Hopkins. As set forth within the sworn Affidavit of Elizabeth Peralta, it was a pre-fight analysis by announcer, James Brown, being unlawfully exhibited by the establishment doing business as "New Millenium Seafood" on September 18, 2004. As at no time did this establishment ever lawfully license the Program from our company for such a purpose.

8. It is essential that I communicate to the Court that to the best of my knowledge our programming is *not* and cannot be mistakenly, innocently or accidentally intercepted. Some methods that a signal pirate can unlawfully intercept and broadcast our programming are as follows without limitation:

> A. The use of a "blackbox", "hotbox", or "pancake box" which is purchased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or
>
> B. The use of a "smartcard" or "test card" or "programming card" which is purchased for a fee and when installed on a DSS satellite receiver line will allow for the descrambled reception of a pay-per-view broadcast, or
>
> C. The purposeful misrepresentation of a commercial establishment as a residential property to allow the fraudulent purchase of a pay-per-

view (or prohibited) programming at the residential rate, or

D. The use of illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises (which would purchase the broadcast at a residential price and divert the program to the commercial establishment), and/or

E. The purchase of other illegal unencryption devices, and the purchase of illegal satellite authorization codes which are readily available on the internet, in trade publications, and through "word of mouth".

9. Turning these facts to the matter before the Court I have been advised by counsel that the Court has wide discretion in the awarding of statutory damages for the nefarious, illegal and debilitating activities of signal pirates which are injurious to our company and our lawful customers.

10. It is respectfully submitted to this Honorable Court that the unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

11. We, at Garden City Boxing Club, Inc., believe that the persistent signal piracy of our programming costs our company, our customers, and their communities, millions of dollars annually resulting in part, from the perceived lack of consequences (including nominal or minimal damage awards by the Courts who hear our cases) for such unlawful interception and exhibition by the commercial signal pirates.